IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : <br> : <br> : **MDL No. 2002** <br> : **08-md-02002** <br> : |
| THIS DOCUMENT APPLIES TO: ASSOCIATED WHOLESALE GROCERS, INC. v. UNITED EGG PRODUCERS, No. 11-cv-3520 | : <br> : <br> : <br> : <br> : |

MEMORANDUM

GENE E.K. PRATTER, J.                                                                                   DECEMBER 19, 2011

Plaintiffs have moved for the remand of this action for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). For the reasons that follow, the Court grants the motion.

**I. Background**

Plaintiffs are six direct purchasers of eggs and egg products who originally filed their Complaint in the Twenty-Ninth Judicial District, the District Court of Wyandotte County, Kansas. As the basis for their single claim, Plaintiffs exclusively rely on Kansas state law in asserting that various egg and egg product producers and trade groups conspired to fix prices and restrict the supply of shell egg and egg products in violation of the Kansas Restraint of Trade Act, Kan. Stat. Ann. §§ 50-101 and 50-112.

After Plaintiffs initiated suit, this "Kansas action" has navigated several procedural stopovers before ultimately coming to roost before this Court. Defendants filed a notice of removal of the action before the U.S. District Court of Kansas, following which Plaintiffs filed the motion *sub judice*. While the motion was pending before the Kansas federal court, the Judicial Panel on Multidistrict Litigation conditionally transferred this action to the Processed

Egg Products Antitrust Litigation (MDL No. 2002), then pending in this Court. *See* J.P.M.L. Transfer Order (Doc. No. 515). The cases coordinated or consolidated in the multidistrict litigation concern allegations of a conspiracy in violation of the Sherman Act among egg producers and trade groups to manipulate the supply of eggs and egg products and thereby affect the domestic prices of those goods. *See In re Processed Egg Prods. Antitrust Litig.*, 588 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008). Some of those cases also include various state law claims against the Defendants. Because this Kansas action has been conditionally transferred to the multidistrict litigation, the pending motion for remand is before this Court.[1]

## II. Subject Matter Jurisdiction

A defendant may properly remove to federal district court a civil action originally brought in state court, so long as the federal district court would have original jurisdiction over the matter. *See* 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 7-8 (1983). In doing so, the removing defendant bears the burden of establishing that jurisdiction exists. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir. 1995).

---

[1] Defendants filed their Notice of Removal on the docket of the U.S. District Court of Kansas, Civil Action No. 11-2063 at Docket No. 1. On that docket, Plaintiffs filed their Motion to Remand at Docket No. 21, and Defendants responded in opposition. Defendants jointly filed a response at Docket No. 68 (hereinafter, "Defs.' Resp."), and Defendant Sparboe Farms, Inc. responded separately at Docket No. 66 (hereinafter, "Sparboe Resp."). Plaintiffs filed their reply at Docket No. 75 (hereinafter, "Pls.' Reply").
    Upon the transfer of the case to this district, this Court granted leave for the parties to file supplemental briefing as to Third Circuit law; those supplemental briefs are filed on this Court's docket, Action No. 08-md-2002 at Docket Nos. 529 and 530 (hereinafter, respectively, "Pls.' Suppl." and "Defs.' Suppl."). All Defendants joined the Defendants' supplemental memorandum. *See* Defs.' Suppl. at 9 n.5. Plaintiffs also filed a Notice of Supplemental Authority with this Court at Docket No. 540.

Here, as the parties agree, because the named parties are not diverse, the Court's jurisdiction cannot be based upon diversity jurisdiction under 28 U.S.C. § 1332(a). "Where the parties are not diverse, removal is appropriate only if the case falls within the district court's original 'federal question' jurisdiction . . . ." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002). In their removal papers Defendants invoked both 28 U.S.C. §§ 1331 and 1337 as bases for federal question jurisdiction. *See* Defs.' Notice of Removal at ¶ 4. These provisions respectively provide for the district court's original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," 28 U.S.C. § 1337. The term "arising under" is construed consistently across these provisions. *Franchise Tax Bd.*, 463 U.S. at 8 n.7 ("[W]e have not distinguished between the 'arising under' standards of § 1337 and § 1331.").

Defendants argue that the Kansas action raises federal question jurisdiction sufficient for removal: "(1) because Plaintiffs allege claims that arise in interstate commerce that arise solely under federal law; (2) because at least two Plaintiffs allege claims that have no connection at all to Kansas and, therefore, at least those claims cannot arise under Kansas law and must arise under federal law; (3) because the federal law of agricultural cooperatives completely preempts state law; and (4) because Plaintiffs' claims (even if properly pled under the Kansas Act) on their face raise substantial federal questions." Defs.' Resp. at 1. However, the Court determines that the federal issues identified by Defendants, to the extent that the Complaint's lone state claim implicates any, are insufficient to establish federal question jurisdiction.

3

### A. Well-Pleaded Complaint Rule and Artful Pleading Doctrine

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (internal quotations omitted) (citing *Franchise Tax Bd.*, 463 U.S. at 9-10). Under the rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)); *see also Gully*, 299 U.S. at 115 ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.").

Accordingly, a petition for removal and an answer to a complaint are irrelevant in determining the presence *vel non* of a federal question, and "[i]t is not enough that a federal question is or may be raised as a defense." *U.S. Express*, 281 F.3d at 389 (citation omitted). Likewise, counterclaims are inadequate to confer federal jurisdiction. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). In essence, the "rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.

"[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, a "state suit need not invoke a federal law in order to 'arise under' it for removal purposes." *U.S. Express*, 281 F.3d at 389. Consequently, for purposes of federal question jurisdiction, either a "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law." *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citing *Franchise Tax Bd.*, 463 U.S. at 27-28).[2]

A familiar, if cynical, corollary to the well-pleaded complaint rule is the "artful pleading" doctrine. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *Franchise Tax Bd.*, 463 U.S. at 22 (1983). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet*, 522 U.S. at 475. As such, this doctrine "requires a court to peer through what are ostensibly wholly state claims to discern the federal question lurking in the verbiage." *U.S. Express*, 281 F.3d at 389.

In doing so, it is important to recognize that the term "federal issue" is not merely "a password opening federal courts to any state action embracing a point of federal law," and that a cause of action simply "appear[ing] in state raiment" is not necessarily cause for exclusion from federal courts. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).[3] Accordingly, the Court must ask "does a state-law claim necessarily raise a stated

---

[2] Additionally, a "state claim may be removed to federal court . . . when Congress expressly so provides, such as in the Price-Anderson Act . . . ." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). That Act "contains an unusual pre-emption provision, 42 U.S.C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims." *Id.* at 6 (citation omitted).

Another such example is the Securities Litigation Uniform Standards Act of 1998, the removal provision for which, 15 U.S.C. § 78bb(f)(2), is "jurisdictional" and "creates an express exception to the well-pleaded complaint rule, conferring federal removal jurisdiction over a unique class of state law claims." *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 297-298 (3d Cir. 2005) (footnote and citation omitted).

[3] As the Third Circuit Court of Appeals has recognized, generally, "there is a very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute." *R.R. Labor Execs.*

(continued...)

federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? *Id.* at 314.

In their Complaint, Plaintiffs present a cause of action under state law, the Kansas Restraint of Trade Act ("KRTA"), for violations of Kan. Stat. Ann. §§ 50-101 and 50-112. *See* Compl. ¶¶ 227, 234-35, 37 (articulating that Defendants' alleged conduct was "in violation of the Kansas Restraint of Trade Act, K.S.A. 50-101 and 50-112" and seeking relief pursuant to Kan. Stat. Ann. §§ 50-115, 50-108, and 50-161). This "Kansas law is similar in some respects to the Sherman Act, but it is not identical." *Bergstrom v. Noah*, 974 P.2d 520, 531 (Kan. 1999). The Act "denies any person the right to form a trust or to be 'in any manner interested' in a trust, 'either directly or directly,' as defined in the [Act,] K.S.A. 50-102. In addition, all arrangements, contracts, agreements or trusts 'which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state' are 'against public policy, unlawful and void.'" *Van Hoecke Contracting, Inc. v. Lennox Indus., Inc.*, No. 05-02343, 2005 WL 2575271, at *3 (D. Kan. Oct. 12, 2005) (quoting Kan. Stat. Ann. § 50-112). The Supreme Court of Kansas has summarized the KRTA as "very sweeping in its provisions. It defines and denounces five kinds of combinations, which it denominates trusts. The definitions are couched in general terms, but cover almost every conceivable device by which freedom of commerce might be hampered, competition restricted, or the price of commodities controlled." *Bergstrom,*

---

(...continued)
*Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988).

974 P.2d at 530 (quoting *Kansas v. Wilson*, 80 P. 639, 640 (1906) in reference to Kan. Stat. Ann. §§ 50-101 to 50-110); *see also Van Hoecke*, 2005 WL 2575271, at *4 (quoting same).[4]

None of the Defendants' arguments against remand are premised upon the contention that the Complaint is deficient in alleging a prima facie claim under the KRTA. *Cf. United Jersey Banks v. Parell*, 783 F.2d 360, 368 (3d Cir. 1986) (commenting that "federal jurisdiction will not be found when the complaint states a prima facie claim under state law"); *see also Jackson v. Prime Motors, Inc.*, No. 11-2360, 2011 WL 1883806, at *3 (E.D. Pa. May 18, 2011). Instead, Defendants attempt to recast the Plaintiff's claim as one arising under the Sherman Act because "[e]ither in whole or in part, Plaintiffs allege interstate conspiracy claims that can only arise under the Sherman Act." Defs.' Resp. at 6.

Defendants argue that Plaintiffs assert factual allegations that involve "the same nationwide conspiracy, in interstate commerce, to fix prices of eggs and egg products," and which are "virtually identical" to those allegations giving rise to the federal claims existing in the multidistrict litigation. *Id.*[5] However, even if the same factual allegations and same theory of conspiracy could give rise to both federal and state claims, the fact that Plaintiffs could have also brought a Sherman Act claim is not a factor in applying the well-pleaded complaint rule. *See*

---

[4] One federal district court also observed recently that:
> In discussing the Kansas restraint of trade act, Kansas Supreme Court noted that no hard and fast rule could be laid down, but that the question is never whether there is a restraint of trade, but whether the restraint is reasonable and whether or not the restraint contravenes the public welfare. Because the restraint of trade act concerns itself with the public welfare, it was designed to protect the competitive process, not competitors.

*Ablulimir v. U-Haul Co. of Kansas, Inc.*, No. 11-4014-EFM, 2011 WL 2731774, at *6 (D. Kan. July 13, 2011).

[5] Plaintiffs do not appear to dispute that their Complaint is premised upon factual allegations that form the cause of actions at issue in the multidistrict litigation.

7

*Delta Dental of R.I. v. Blue Cross & Blue Shield of R.I.*, 942 F. Supp. 740, 747 (D.R.I. 1996) ("... [T]he present dispute could have been brought as a federal antitrust claim under the Sherman Act. [Plaintiff] has chosen to forego its rights under federal law, however, instead relying exclusively on state law in asserting its claims against [Defendant] .... [Plaintiff], as the master of the claim, has chosen to rely exclusively on state law and to litigate in state court—a choice that [Defendant] cannot defeat, notwithstanding that the case could have been brought under the Sherman Act or that federal defenses might be available.").

Defendants also contend that Plaintiffs are impermissibly seeking to recover for claims based upon sales of goods outside of Kansas, and that Plaintiffs "can only seek recovery [for those claims] pursuant to federal law." Defs.' Resp. at 8. Namely, according to Defendants, Kansas courts generally do not recognize the enforcement of state law on extraterritorial acts and that the KRTA cannot apply to out-of-state transactions because to do so would conflict with the federal dormant commerce clause. *Id.* Additionally, Defendants claim that some of these six Plaintiffs may not be able to recover at all under the KRTA because those Plaintiffs' claims do not involve sales made in or into Kansas. *Id.* at 7-8. Even assuming, *arguendo*, the validity of these arguments, Defendants are merely highlighting that Plaintiffs may not be able to recover under the KRTA for the full scope of the activities and damages alleged in the Complaint for various reasons, including because of at least one reason premised upon a federal legal issue.[6]

---

[6] There is some authority that may further diminish the Defendants' interstate commerce argument in one respect. *See In re Wyoming Tight Sands Antitrust Cases*, No. 85-2349, 1990 WL 136788, at *4 (D. Kan. Aug. 2, 1990) (rejecting an argument that "Kansas antitrust laws regulate activities solely in intrastate and opposed to interstate commerce" because "K.S.A. 50-112 clearly makes unlawful 'all arrangements ... which tend to prevent full and free competition in the importation, transportation or sale of articles imported *into this state*" and by "its clear language, the statute clearly contemplates enforcement in the interstate context," and because the
(continued...)

Nonetheless, these arguments are not occasion for a Chicken Little panic. Instead, they simply constitute defenses to the state claim, and defenses do not provide appropriate grounds for removal on the basis of federal question jurisdiction.[7]

Defendants are equally unpersuasive in their argument that "the Plaintiffs' Complaint raises the substantial federal question of the agricultural cooperative's immunity on its face." Defs.' Resp. at 20. All parties appear to agree that the Capper-Volstead Act and the other statutes, "allow[] certain agricultural producers to form cooperatives without incurring antitrust liability." *In re Mushroom Direct Purchaser Antitrust Litig.*, 655 F.3d 158, 158 (3d Cir. 2011). However, according to Defendants, the Plaintiffs' allegations "are designed to establish that Defendants have not complied with the terms of the federal cooperative acts [such as the Capper-Volstead Act, the Agricultural Cooperative Marketing Act, and Section 6 of the Clayton Act]. Otherwise, Defendants' alleged actions would be legally justified and Plaintiffs could not prove that Defendants engaged in anticompetitive conduct." Defs.' Suppl. at 7.

However, there are no allegations in the Complaint that refer to any federal statute, let alone any allegations that Defendants do not qualify for immunity under the Capper-Volstead Act

---

(...continued)
cases raised by the movant "demonstrate that when a challenged course of conduct has implicated both inter-and intrastate commerce, the courts have applied Kansas antitrust statutes").

[7] In exercising their "plaintiff's choice" by only pursuing a KRTA claim in their Complaint, Plaintiffs may have accounted for the advantages and disadvantages of pursuing remedies under the KRTA in lieu of the Sherman Act. *See, e.g.*, Kenton C. Granger, *A Glimpse at a Plaintiff's Remedies Under Kansas' Antitrust Laws*, 8 Washburn L.J. 1, 10-13 (describing some of the possible advantages of bringing a KRTA suit as compared to a federal antitrust suit, and vice versa).

9

or a similar federal statute. Furthermore, Defendant Sparboe Farms, Inc.[8] acknowledges that "compliance or non-compliance" with those statutes "is not an element of Plaintiffs' claims," and thus "Plaintiffs are not required to make any affirmative pleading with respect to federal statutes." Sparboe Resp. at 13.

As previously discussed, although the Complaint contains *factual* allegations that *could* give rise to a federal antitrust claim, or factual allegations that ostensibly appear to anticipate a federal defense, the existence of these possibilities do not provide grounds for federal question jurisdiction when Plaintiffs do not actually assert a federal antitrust claim.[9] Likewise, no grounds

---

[8] In the pending multidistrict litigation, Direct Purchaser Plaintiffs entered into a settlement agreement with Sparboe, as well as a settlement agreement with another group of Defendants. Plaintiffs have represented to the Court that "Plaintiffs opted-out of th[ose] direct purchaser settlements on or before November 16, 2010, and filed their lawsuit in Kansas state court." Pls.' Mot. at 4, ¶ 12, *see also id.* at 3-4, ¶¶ 9-11.

[9] The Court does not address in this decision whether the Capper-Volstead Act or the other statutes create a recognized defense to the KRTA. However, the Court observes that Defendants, in recounting the development of the Capper-Volstead Act in light of the history of "prosecutions of [agricultural] cooperatives under state antitrust laws," quote the Supreme Court for the contention that "[s]ome state courts had sustained antitrust charges against agricultural cooperatives, and as a result eventually *all the States passed Acts authorizing their existence*." Defs.' Resp. at 14-15 (emphasis added) (quoting *Md. & Va. Milk Producers Ass'n v. United States*, 362 U.S. 458, 464 (1960)). Seemingly, the Cooperative Marketing Act, Kan. Stat. Ann. §§ 17-1601 to 17-1636, which provides, "[n]o association, contract, method or act which [under Kansas law qualifies as, or is conduct attributed to, an agricultural cooperative association] shall be deemed a conspiracy or combination in restraint of trade or as creating an illegal monopoly," *id.* § 17-1634, may qualify as one such state statute. *See Kan. Wheat Growers' Ass'n v. Charlet*, 236 P. 657, 658 (Kan. 1925) (commenting that the Kansas Supreme Court had "held the statute [the Cooperative Marketing Act] to be valid, and held the [defendant] association is not an unreasonable combination in restraint of trade, or an organization for fostering unlawful monopoly"). It follows that the Cooperative Marketing Act might provide an alternative explanation for why Plaintiffs alleged facts that could be construed as anticipating an "agricultural cooperative"-type defense. *See, e.g.*, Compl. ¶ 106 ("These activities fall outside the legitimate objectives of any agricultural cooperative."); *id.* ¶ 108 ("UEP members are large corporate competitors rather than small farmers banding together to cut out the corporate middlemen who would otherwise market their eggs. UEP members do not associate to

(continued...)

for federal question jurisdiction exist because Plaintiffs do not have to prove (or disprove) a substantial question of federal law to make out all necessary elements of their KRTA claim. *See Grable*, 545 U.S. at 314-15 (recognizing that federal question jurisdiction exists when the meaning of a federal statute both is disputed and is an essential element of the plaintiff's state law cause of action).[10] As such, the Defendants' arguments on this score do not implicate any of the previously discussed principles concerning federal question jurisdiction, the well-pleaded complaint rule, and the artful pleading doctrine that would warrant denying the remand request.

### B. Complete Preemption

Another way in which the artful pleading doctrine permits removal is "where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475. That is, when the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3566 ("It is based on the theory that some federal statutes have such an overwhelming preemptive effect

---

(...continued)
collectively process, handle and market their products, and UEP does not provide those services. UEP does not wash, candle, grade, break, pasteurize, package, store, transport, or distribute its members' eggs. UEP does not negotiate contracts for sale for its members.").

[10] Contrary to the Defendants' contention otherwise, they have not demonstrated that the Plaintiffs' KRTA claim is like the state law quiet title claim in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308. In *Grable*, the Supreme Court upheld the removal of a state quiet title claim because it was premised on the grounds that a sale of real property was invalid because the service of an IRS seizure notice was inadequate under a federal statute. *Id.* at 310-11. The issue involving notice under the federal statute was thus "an essential element of [the] quiet title claim." *Id.* at 315. Here, the purported federal issue of an agricultural cooperative's immunity *might* arise as an affirmative defense to the Plaintiff's KRTA claim, but not as an element of the cause of action.

that they do more than merely provide a defense to a state-law claim.").[11] This occurs "when a federal statute wholly displaces the state-law cause of action." *Anderson*, 539 U.S. at 6, 8; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 294 (3d Cir. 2005). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.[12]

The Court of Appeals for the Third Circuit has determined that complete preemption exists only when (1) the federal statute that ostensibly serves as the basis for removal "contains civil enforcement provisions within the scope of which the plaintiff's claim falls," and (2) there is "a clear indication of a Congressional intention to permit removal." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 311 (3d Cir. 1994) (quoting *R.R. Labor*, 858 F.2d at 942); *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989).

Although our Court of Appeals has not revisited the test in recent years, the second-part of this inquiry may have been modified by a subsequent Supreme Court decision to "focus[] on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Anderson*, 539 U.S. at 9 n.5. Under

---

[11] "Very few statutes have a complete preemption effect." Wright & Miller, *supra* § 3566. Examples of statutes that have been found to completely preempt state law include the Labor Management Relations Act, 1947, and the Employee Retirement Income Security Act of 1974. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999).

[12] In this way, complete preemption could be understood to serve as the recalibration of a non-existent state claim into the federal claim that it actually is: "An effort to invoke nonexistent state law is no different from a spelling error. A complaint reciting that a firm with a large share of the market for some product is violating 'the anti-rust laws' could not be dismissed on the observation that there is no federal prohibition of iron oxide. A court would treat the document as one under anti-trust law from the outset." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir. 1992).

either formulation of the test, "Congressional intent remains the touchstone, however." 14B Wright & Miller, *supra* § 3722.2.

In one case illustrative of complete preemption, the Supreme Court "found complete preemption" when "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. However, the Supreme Court has recognized that "the absence of a federal private right of action as evidence [is] relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that [28 U.S.C.] § 1331 requires." *Grable*, 545 U.S. at 318. Indeed, "the combination of no federal cause of action and no preemption of state remedies . . . [is] an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. [Thus, a] missing cause of action [is] not . . . a missing federal door key, always required, but [is] a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state . . . action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.*

Courts often emphasize that complete preemption, which addresses federal subject matter jurisdiction, is "a distinct concept from ordinary preemption." *R.R. Labor*, 858 F.2d at 941 (citing *Caterpillar*, 482 U.S. at 398). In contrast, "[o]rdinary preemption governs what substantive law—federal or state—ought to control a claim styled under state law." *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 114 n.3 (3d Cir. 1990); *see also Guckin v. Nagle*, 259 F. Supp. 2d 406 (E.D. Pa. 2003) ("In other words, complete preemption addresses the forum, i.e., federal or state, where the claim must be heard; 'ordinary preemption' addresses the substantive rule of decision, i.e., federal or state, which the court must apply."); *Vorhees v. Naper Aero Club, Inc.*,

13

272 F.3d 398, 403 (7th Cir. 2001) ("Only 'complete' preemption affects federal subject matter jurisdiction. 'Conflict' preemption relates to the merits of a claim. It comes into play any time a state law allegedly conflicts with federal law."); Wright & Miller, *supra* § 3556 ("The name [of 'complete preemption'] is misleading and this doctrine should be contrasted with 'ordinary' or 'conflict' preemption, under which federal law provides a defense to a state-law claim. 'Complete preemption,' in contrast, is actually a doctrine of subject matter jurisdiction." (footnote omitted)). Ordinary defensive preemption is embodied in the three categories of express preemption, conflict preemption, and field preemption. *See Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citing *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

However, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." *R.R. Labor*, 858 F.2d at 941 (quoting *Caterpillar*, 482 U.S. at 398). As such, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 12).

Defendants contend that the principles of complete preemption apply to the KRTA claim by arguing that federal law regulating the economic activities of agricultural cooperatives completely preempts state law. According to Defendants, the "Plaintiffs' claims against [a trade group] and the individual Defendants arise in an area that is completely preempted by federal law" because the Capper-Volstead Act, the Agricultural Cooperative Marketing Act, and Section

6 of the Clayton Act "comprehensively regulate[] the joint economic activities of agricultural cooperatives." Defs.' Resp. at 12.

As Plaintiffs correctly contend in rejoinder, however, Defendants have not sustained their burden in demonstrating that removal is appropriate on the basis that the Plaintiffs' claim is completely preempted by the Capper-Volstead Act and the like. For example, Defendants have not pointed to any authority that suggests that any of the federal statutes that purportedly regulate the economic activities or competition of agricultural cooperatives create an exclusive cause of action or set forth procedures and remedies governing such actions. Moreover, the Defendants do not take the position that the Capper-Volstead Act, or the other statutes in combination or separately, create any sort of cause of action—and certainly not an exclusive cause of action—but rather provide for a kind of "immunity" to antitrust claims. Indeed, Defendants argue that those statutes "permit joint actions that might otherwise be illegal" and that "should cooperatives engage in anticompetitive behavior beyond that allowed by these statutes, then federal law provides a remedy through the Sherman Act." Defs.' Suppl. at 5-6; *see also* Defs.' Resp. at 12-13. In other words, Defendants appear to recognize that any federal cause of action in antitrust cases involving agricultural producers arises under the Sherman Act, not the Capper-Volstead Act or similar federal law.[13]

Defendants also have failed to demonstrate that those statutes manifest the Congressional intent that Defendants attempt to assign them. Defendants claim that the statutes "reflect a sustained congressional intent that agricultural cooperatives affirmatively be permitted to act

---

[13] Although the Defendants occasionally invoke the Sherman Act in their arguments as to complete preemption, they are explicit in stating that they "do not contend that federal antitrust law preempts all state antitrust law." Defs.' Resp. at 19.

jointly with and on behalf of their members," Defs.' Resp. at 12-13, and as such the statutes "evince an intent to occupy the field and preempt state law." Defs.' Suppl. at 5. Defendants cite excerpts of the plain language of the Capper-Volstead Act, the Agricultural Cooperative Marketing Act, and Section 6 of the Clayton Act, as well as quotations from case law and commentators that discuss those statutes in a summary manner. *See* Defs.' Resp. at 13-17.[14] However, a close review of those authorities reveals that while there may be considerable Congressional interest in the economic activities of agricultural cooperatives, those authorities do not go so far as to serve as evidence that Congress intended to create a cause of action that is exclusively federal and could serve as the basis for removal, or that Congress intended these statutes to completely preempt state remedies.

Furthermore, the quintessence of the Defendants' argument as to complete preemption reveals that Defendants are scrambling the principles of complete preemption with the defense of federal preemption.[15] Indeed, this is evident in the Defendant's invocation of "field preemption"

---

[14] Some examples of the Defendants' legal authority from case law and commentators includes: Christine Varney, *The Capper-Volstead Act, Agricultural Cooperatives, and Antitrust Immunity*, *The Antitrust Source*, at 1 (Dec. 2010) (quoted by Defendants for the contention that the "Capper-Volstead Act represented the culmination of a long struggle by farmers to guarantee their right to organize cooperatives" and that the "passage of the Sherman Act and many state antitrust laws" led to "widespread concern . . . that these laws would be used against agricultural cooperatives"), and *Bell v. Fur Breeders Agricultural Cooperative*, 348 F. 3d 1224, 1232-33 (10th Cir. 2003) (cited by Defendants for the proposition that federal courts "have determined that agricultural cooperatives, like corporations, do not have the plurality of actors necessary for a Section 1 conspiracy").

[15] This conflation is not unique to Defendants. *See, e.g., Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 n.7 (2d Cir. 2005) ("Some commentators seem to equate the defense of field preemption, which defeats a plaintiff's state-law claim because federal law 'occupies the field' within which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims. . . . But no Supreme Court case has ever held the two forms of preemption to be equivalent. It is true that the defense of
(continued...)

and "conflict preemption," which, as previously discussed, are defenses to the merits of a state claim. Given that in the removal context the Court's federal question jurisdiction cannot rest on federal defenses of preemption, the Defendants' reliance on ordinary preemption concepts cannot win the day. In sum, Defendants have not met their burden of demonstrating that removal on the grounds of complete preemption is appropriate.[16]

### III. Request for Fees and Costs

Plaintiffs have requested pursuant to 28 U.S.C. § 1447(c) the recovery of costs and expenses they have incurred due to the Defendants' removal of the Kansas action. However, the Court concludes that denial of this request is appropriate.

28 U.S.C. § 1447(c) provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

---

(...continued)
field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force. The two types of preemption are, however, better considered distinct." (citations omitted)).

[16] Although remand is appropriate at this time, the Court recognizes that this case might join the pending multidistrict litigation at another time. Such an occasion might develop, for instance, pursuant to the Class Action Fairness Act ("CAFA"). By way of example, this Court's jurisdiction might arise under CAFA given the potential interplay between the possible (albeit, rather novel) formation of a class of defendants, *see, e.g.*, Kan. Stat. Ann. § 60-223; *S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1030 (10th Cir. 1993) (describing a district court's certification of a defendant class upon a defendant's motion); CAFA's broad jurisdictional grant for state class actions, including those with a proposed class, 28 U.S.C. § 1332(d); and the federal removal statute, 28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.").

17

There is no requirement "that fees under § 1447(c) should either usually be granted or usually be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005).

Instead, the Court is guided by the standard that, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* at 136. Additionally, the Court has "discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees." *Id.* at 141. This standard serves to "recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied," and likewise, not "discouraging [the] exercise [of removal] in all but obvious cases." *Id.* at 140. In exercising this discretion, the Court must ensure its rationale is "'faithful to the purposes' of awarding fees under § 1447(c)." *Id.* at 141.

Plaintiffs claim that fees and costs are warranted because Defendants did not have an objectively reasonable basis for removal. In support, they cite a case from another district in this Circuit that found that "no reasonable basis for removal" was presented when the Defendants' arguments for removal were previously rejected by the Supreme Court and other courts. *See Gilbert v. Synagro, LLC*, No. 1:CV-08-1460, 2008 WL 5146506, at *1 (M.D. Pa. Dec. 8, 2008). Plaintiffs also argue that "Defendants failed to cite to any case from anywhere in the country that supported this argument." Pls.' Suppl. at 10.

However, this line of argument verges on the pot calling the kettle black. Plaintiffs likewise did not raise any legal authority that directly considered (and rejected) the Defendants' arguments. It may be that no court has had occasion to consider arguments like those raised by Defendants, or that the parties' research simply did not uncover such authority. Regardless, no single, dispositive conclusion can be drawn from the parties' mutual failure to raise legal authority that directly addressed Defendants' arguments—albeit, given the high quality of advocacy that the parties' counsel respectively exhibited, this result suggests by implication that there was no obvious authority contravening removal. Furthermore, based upon the circumstances of removal and the parties' briefing, it could be fairly said that Defendants were attempting to extend this area of law based upon certain legal authority, and that although the Court ultimately disagreed with their interpretation of that authority, the legal authority cited provided an objectively comprehensible and nonfrivolous basis for removal. *Cf. Vandeventer v. Guimond*, 494 F. Supp. 2d 1255, 1269 (D. Kan. 2007).

Additionally, Plaintiffs imply that the Defendants' removal efforts are an intentional attempt to delay the litigation and impose unnecessary costs on Plaintiffs because the Defendants also sought to "stay the District of Kansas from timely ruling on Plaintiffs' Motion to Remand and by transferring this lawsuit across the country." Pls.' Suppl. at 10. However, this other alleged conduct, even if true, does not demonstrate intent to extensively prolong the litigation and impose costs upon Plaintiffs, particularly when considering this removal in the framework of the pending multidistrict litigation, which involves many of the same defendants and shares

common factual allegations with the Plaintiffs' Complaint. Furthermore, the Court does not find other evidence of intentional delay here.

In sum, Plaintiffs do not cite to any legal authority or underlying facts in this case, nor does the Court find any such circumstances, that would justify an award for fees and costs under § 1447(c). Furthermore, the Court determines that none of the purposes underlying § 1447(c) compel the award of fees and costs in the present circumstances. Accordingly, the Court denies the Plaintiffs' request for attorney's fees and costs.

### IV. Conclusion

Although Defendants have mustered a series of arguments to support their removal of the Kansas action, these arguments must be considered unavailing. The Defendants' arguments essentially invoke defenses to the Complaint as the basis for the Court's federal question jurisdiction. However, defenses, even those that conjure federal issues and preemption defenses, simply are insufficient to support removal on the basis that the Plaintiffs' claim arises under federal law. Furthermore, Defendants have failed to satisfy their burden of demonstrating that the Plaintiff's KRTA claim establishes federal question jurisdiction. Accordingly, the Court grants the Plaintiffs' Motion for Remand, and the action will be remanded for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

An Order consistent with this Memorandum follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge